UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 21-cv-60486

JAMES PETERS,

     Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,
TRANSUNION, LLC, COMENITY CAPITAL
BANK and POOCHES OF PINES, INC.,

     Defendants.

_____/

## **COMPLAINT**

Plaintiff, JAMES PETERS ("PETERS") by and through undersigned counsel, and for his complaint against the Defendants, alleges as follows:

## **JURISDICTION AND VENUE**

1.    This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq.* (Federal Fair Credit Reporting Act "FCRA"), Fla. Stat. §559.55, *et seq.* (Florida Consumer Collection Practices Act "FCCPA"), Fla. Stat. §828.29 (Animal Enterprise Protection), breach of warranty, breach of contract, and breach of implied covenant of good faith and fair dealing.

2.    The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367

## **PARTIES**

3.    Plaintiff, PETERS, is a natural person and resident of Broward County, Florida.  He is a "consumer" as defined by 15 U.S.C. §1681a(c) and Fla. Stat. §559.55(8).

4. Equifax Information Services, L.L.C ("Equifax") is a limited liability company under the laws of the State of Georgia authorized to do business in the State of Florida.

5. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f).  Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

6. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

7. Experian Information Solutions, Inc. ("Experian") is a corporation incorporated under the laws of the State of Ohio and authorized to do business in the State of Florida.

8. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f).  Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

9. Experian disburses such consumer reports to third parties under contract for monetary compensation.

10. Transunion, L.L.C ("Transunion") is a limited liability company under the laws of the State of Delaware authorized to do business in the State of Florida.

11. Transunion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f).  Upon information and belief, Transunion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

12. Transunion disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant, Comenity Capital Bank, ("Comenity") is a national banking association with its principal place of business at 2795 E. Cottonwood Pkwy., Suite 100, Salt Lake City, UT 84121.

14. Comenity is a "creditor" as defined under the Florida Consumer Collection Practices Act, Fla. Stat. §559.55, *et seq*.

15. Comenity reports credit information to Equifax, Experian, and Transunion and is a "furnisher of information" as defined under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

16. Defendant, Pooches of Pines, Inc. d/b/a Petland Pembroke Pines ("Petland") is a Florida corporation with its principal place of business at 356 North University Drive, Pembroke Pines, FL 33024. It operates as a retail pet store that sells puppies to the public.

## FACTUAL ALLEGATIONS

17. On or about September 5, 2020, PETERS purchased a male, pure bred, Boston Terrier whom PETERS named "Juelz" from Petland for personal use.  PETERS paid $6,752.66 total to purchase Juelz.

18. At the suggestion and with the assistance of Petland employees, PETERS applied for a Petland private label credit card issued by Comenity Capital Bank.

19. PETERS was approved and financed the full balance of the purchase price with Comenity.

20. When PETERS purchased Juelz from Petland, he was provided the following documents:

   a.  Official Certificate of Veterinary Inspection completed and signed by Dr. Brooke Mosher on September 5, 2020 ("OCVI");

    b.   Petland Pembroke Pines Puppy Warranty ("Warranty");

    c.   Know Your Rights Form;

    d.   Petland Purchase Verification Checklist;

    e.   Things to Watch for Once Puppy is Home;

    f.   Puppy for a Lifetime Program;

    g.   The Value of a Petland Puppy;

    h.   Financing Documents and Receipts; and

    i.   Health Record from Blue Ribbon Puppies, Juelz' breeders.

A true and correct copy of these documents are attached hereto as Exhibits "A" – "I", respectively.

21. As soon as Juelz was brought home he began throwing up and had violent bouts of diarrhea.

22. PETERS brought Juelz back to Petland the following day, Sunday September 6, 2020; however, Petland refused to accept Juelz' back or give PETERS a refund, instead instructing him to take Juelz to Pou Veterinary Group ("PVG"), and call the Petland Solutions Center.

23. Petland required that, under its warranty, PETERS contact PVG regarding the care of Juelz. PVG advised PETERS that he would be responsible for all costs and would have to be reimbursed by Petland directly.

24. On Tuesday, September 8, 2020, PETERS took Juelz to 'Your Pets Vets', who were also named in Peatland's warranty and who signed the OCVI attesting that the puppy was healthy the day the puppy was purchased.

25. Juelz was diagnosed with Giardia, a microscopic parasite that causes the diarrheal illness known as giardiasis. Giardia is found on surfaces or in soil, food, or water that has been contaminated with feces from infected humans or animals.

26. PETERS also reached out to the Petland Solutions Center, but his claim was denied within twenty-four (24) hours of filing same.

27. Frustrated at having purchased a sick puppy, and with an 8-year old daughter who was becoming more and more traumatized whilst watching Juelz slowly die, PETERS returned to Petland once more on September 8, 2020 after the veterinary appointment.

28. Upon arrival, the Petland staff told PETERS there was no manager working, there were no refunds allowed, and that the dog **must** be taken to PVG. The Petland staff also told PETERS that diarrhea "was normal" in puppies.

29. PETERS took Juelz home once more, but Juelz was barely functioning and would not eat or drink, eventually having a seizure in front of PETERS' young daughter.

30. Unwilling to allow his young child watch as her first pet die before her eyes, PETERS took Juelz back the Petland once again the following day; once again, he was told that there was no manager available, no refunds, and that PETERS was responsible for Juelz' illness because PETERS "could not take care of her."

31. PETERS left Juelz in his crate at Petland, took video showing his deteriorating condition, and left, with Petland staff threatening to "call the police" and have him charged with abandonment as he left.

32. PETERS continued to seek to be made whole via the Petland Solutions Center. He sent so many emails that he was eventually blocked by them.

33. Plaintiff has continued to pay Comenity the purchase price of the dog but should be relieved from same because the dog was defective at the time of purchase.

34. The Plaintiff called and filed a dispute with Comenity directly but was rejected because the store could not verify the return of Juelz.

35. Pursuant to Fla. Stat. §516.31(2), "[a] holder or assignee of any negotiable instrument or installment contract, … which originated from the purchase of certain consumer goods or services is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services."

36. Comenity financed the purchase of the dog, paid Petland for the full price of the dog, and sends monthly statement to the Plaintiff.

37. Comenity continues to send statements to the Plaintiff.

38. Comenity Capital Bank is liable for the acts of Petland. Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co., 969 So.2d 962, 968 (Fla. 2007).

39. On or about January 13, 2021, Plaintiff sent disputes to, Equifax, Experian, and Transunion. Plaintiff disputed the debt via telephone with Comenity in August 2020. A copy of the redacted dispute letter sent to Equifax, Experian, and Transunion without attachments is attached as Exhibit "J."

40. Comenity received the dispute and accompanying documents from Experian, Equifax, and Transunion and then erroneously verified that the account was valid.

41. After Plaintiff requested verification and correction of the erroneous account information, Equifax, Experian, and Transunion failed to evaluate or consider any of the specific information, claims and evidence provided by Plaintiff.  Additionally, they did not make any attempt to substantially or reasonably verify Comenity's representations.

42. As a result of the erroneous derogatory information, Plaintiff has suffered significant damages, a significant drop in their credit score, the inability to obtain credit, and the aggravation of dealing with Defendants' failure to meaningfully evaluate their dispute.

43. All conditions precedent to the bringing of this action by Plaintiff has been performed, waived, or excused.

44. Plaintiff has retained the undersigned attorney to represent them in this matter and are obligated to pay the undersigned a reasonable fee.

## COUNT I - VIOLATIONS OF FLORIDA STATUTE §828.29 AS TO PETLAND AND COMENITY CAPITAL BANK

45. Plaintiff realleges and incorporate paragraphs 1 through 3 and 13 through 38 above as if fully set out herein.

46. Prior to September 05, 2020, Petland received Juelz' health records from Blue Ribbon Puppies.  The health record purportedly demonstrates that Juelz received her required vaccinations prior to her delivery to Petland.

47. There is no indication that Petland requested, or received, a certificate of veterinary inspection from the State of Ohio, where Blue Ribbon Puppies is located, as required by §828.29(2)(a).

48. On or about September 05, 2020, Petland had Dr. Brooke Mosher conduct an examination of Juelz compliance with §828.29(2)(b). Dr. Brooke Mosher provided Petland with the Certificate of Veterinary Inspection indicating that Juelz was healthy and could sold.

49. Upon information and belief, Petland routinely acquires puppies which it either knows, or should have known, had Giardia in their systems, and ensures these puppies receive Giardia vaccinations to mask the existence of the virus in their systems.

50. Upon information and belief, Juelz is one such puppy that Petland either knew, or should have known, had Giardia in his system, and ensured he was provided Giardia vaccinations to mask the existence in his system, so he could be sold.

51. Petland would rely on its Warranty to shield itself from any liability for the sale of a puppy with Giardia.

52. Petland has violated Florida Statute §828.29, as follows:

    a.    Limiting its liability in the Warranty by requiring the satisfaction of conditions neither contemplated, nor sanctioned, in violation of §828.29(5);

    b.    Requiring the Plaintiff to only use PVG within 4 days from the purchase of Juelz in order to enjoy any benefits under the Warranty in violation of §828.29(5);

    c.    Limiting its liability under the Warranty by requiring Plaintiffs to use PVG for Juelz's Giardia treatment, in violation of §828.29(5);

    d.    Designating PVG's findings as the sole dispositive result as to whether Petland has any liability under the Warranty, in violation of §828.29(5);

    e.    Limiting its liability under the Warranty, which states that no refunds will be provided after 48 hours after purchase, in violation of §828.29(5);

    f.    Limiting its liability under the Warranty, which states that if a refund is requested within the first 48 hours of purchase, it will charge an administrative fee totaling 50% of the purchase price, in violation of §828.29(5);

    g.    Failing to provide Plaintiff with a certificate of veterinary inspection from Juelz's state of origin, in violation of §828.29(1)(a);

    h.    Selling Juelz which Petland knew, or should have known, had Giardia in his system, in violation of §828.29(9), and

    i.    Failing to disclose to Plaintiffs that Juelz had Giardia at the time of sale, in violation of §828.29(16).

53. Comenity Capital Bank is liable for the acts of Petland. Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co., 969 So.2d 962, 968 (Fla. 2007).

54. As a direct and proximate result of Petland's violations of §828.29, Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against Petland and Comenity for damages, interest, costs, plus any and all other relief this Honorable Court deems necessary and just.

## <u>COUNT II – BREACH OF EXPRESSED WARRANTY</u><br><u>AS TO PETLAND AND COMENITY CAPITAL BANK</u>

55. Plaintiff realleges and incorporate paragraphs 1 through 3 and 13 through 38 above as if fully set out herein.

56. Pursuant to its Warranty, Petland was obligated to reimburse Plaintiff in the event a veterinarian diagnosed Juelz with Giardia within 14 days of Plaintiffs' purchase.

57. Juelz was diagnosed and treated for Giardia less than 24 hours after Plaintiffs' purchased Juelz.

58. Further, Juelz was diagnosed with Giardia, which he contracted due to his weak immune system from the Giardia virus, which Petland failed to disclose.

59. Plaintiff wanted to return Juelz and requested a refund from Petland.

60. Petland refused to provide any monetary reimbursement, and continues to refuse to reimburse Plaintiff, despite their obligation to do so under Florida Statute, whereby breaching the Warranty.

61. Comenity Capital Bank is liable for the acts of Petland. <u>Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co.</u>, 969 So.2d 962, 968 (Fla. 2007).

62. As a direct and proximate cause of Petland's breach, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment from Petland and Comenity for damages, interest, costs, plus any and all other relief this Honorable Court deems necessary and just.

## COUNT III – BREACH OF CONTRACT
## AS TO PETLAND AND COMENITY CAPITAL BANK

63. Plaintiff realleges and incorporate paragraphs 1 through 3 and 13 through 38 above as if fully set out herein.

64. The Warranty provided to Plaintiff by Petland is a contractual agreement between the parties.

65. Pursuant to its Warranty, Petland was obligated to reimburse Plaintiff in the event a veterinarian diagnosed Juelz with Giardia within 14 days of Plaintiffs' purchase.

66. Juelz was diagnosed, and treated for Giardia less than 24 hours after Plaintiff purchased Juelz.

67. Further, Juelz was diagnosed with Giardia, which he contracted due to his weak immune system from the Giardia virus, which Petland failed to disclose.

68. Plaintiff wanted to return Juelz and requested a refund from Petland.

69. Petland refused to provide any monetary reimbursement, and continues to refuse to reimburse Plaintiff, despite their obligation to do so whereby breaching the contract.

70. Comenity Capital Bank is liable for the acts of Petland. Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co., 969 So.2d 962, 968 (Fla. 2007).

71. As a direct and proximate cause of Petland's breach, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment from Petland and Comenity for damages, interest, costs, attorneys' fees plus any and all other relief this Honorable Court deems necessary and just.

## COUNT IV – BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING AS TO PETLAND AND COMENITY CAPITAL BANK

72. Plaintiff realleges and incorporate paragraphs 1 through 3 and 13 through 38 above as if fully set out herein.

73. Petland's refusal to honor the terms of the contractual Warranty between it and the Plaintiff is a breach of the implied covenant of good faith and fair dealing.

74. Comenity Capital Bank is liable for the acts of Petland. Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co., 969 So.2d 962, 968 (Fla. 2007).

75. As a direct and proximate cause of Petland's breach, Plaintiff has been damaged.

   WHEREFORE, Plaintiff demands judgment from Petland and Comenity for damages, interest, costs, plus any and all other relief this Honorable Court deems necessary and just.

## COUNT V – BREACH OF IMPLIED WARRANTY
## AS TO PETLAND AND COMENITY CAPITAL BANK

76. Plaintiff realleges and incorporate paragraphs 1 through 3 and 13 through 38 above as if fully set out herein.

77. Juelz is a considered "goods" as that term is defined in Fla. Stat. §672.105(1).

78. At all times material hereto, Petland has dealt regularly in the sale of puppies, and as such is a "merchant" as that term is defined in Fla. Stat. §672.104(1).

79. Petland, as a merchant with knowledge or skill peculiar to its practices as a seller of puppies and having superior knowledge than Plaintiffs as a result of its business selling puppies to consumers, implicitly warranted that Juelz was healthy, fit, and suitable for consumer purchase and ownership.

80. Plaintiff bought Juelz, who was not healthy, fit or suitable for consumer purchase because he had the Giardia virus in his system at the time of sale.

81. By selling Juelz, who was not healthy or suitable for consumer ownership, Petland breached the implied warranty of merchantability.

82. Comenity Capital Bank is liable for the acts of Petland. <u>Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co.</u>, 969 So.2d 962, 968 (Fla. 2007).

83. As a direct and proximate result of Petland's breach of the implied warranty of merchantability, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment against Petland and Comenity for damages, interest, cost, plus any and all other relief this Honorable Court deems necessary and just.

<u>**COUNT VI AS TO EQUIFAX'S VIOLATION OF 15 U.S.C. §1681e(b)**</u>

84. Plaintiff realleges and incorporate paragraphs 1 through 6, and 17 through 44 above as if fully set out herein.

85. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit file it published and maintains concerning the Plaintiff.

86. As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from a credit, specifically being denied for a loan, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

87. Equifax's conduct, action or inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. 1681o.

88. Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiff demand judgment be entered in his favor and against Equifax for the following:

    a) Actual damages in an amount to be proved at trial;

    b) Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

    c) Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

    d) Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

    e) Such other and further relief as this Court deems just and proper.

## COUNT VII AS TO EQUIFAX'S VIOLATION OF 15 U.S.C. §1681i

89. Plaintiff realleges and incorporate paragraphs 1 through 6, and 17 through 44 above as if fully set out herein.

90. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Comenity; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

91. As a result of this conduct, action and inaction of Equifax, Plaintiff suffered damages by loss of credit; loss of the ability to purchase and benefit from credit, specifically Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

92. Equifax's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

93. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

WHEREFORE, Plaintiff demands judgment be entered in his favor and against Equifax for the following:

    a)  Actual damages in an amount to be proved at trial;

    b)  Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

    c)  Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

    d)  Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

    e)  Such other and further relief as this Court deems just and proper.

## COUNT VI AS TO EXPERIAN'S VIOLATION OF 15 U.S.C. §1681e(b)

94. Plaintiff realleges and incorporate paragraphs 1 through 3, 7 through 9, and 17 through 44 above as if fully set out herein.

95.  Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit file it published and maintains concerning the Plaintiff.

96.  As a result of this conduct, action and inaction of Experian, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from a credit, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from a credit,

specifically being denied for a loan, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

97. Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. 1681o.

98. Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n, 1681o, or both.

WHEREFORE, Plaintiff demands judgment be entered in his favor and against Experian for the following:

    a)  Actual damages in an amount to be proved at trial;

    b)  Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

    c)  Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

    d)  Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

    e)  Such other and further relief as this Court deems just and proper.

## COUNT VII AS TO EXPERIAN'S VIOLATION OF 15 U.S.C. §1681i

99. Plaintiff realleges and incorporate paragraphs 1 through 3, 7 through 9, and 17 through 44 above as if fully set out herein.

100. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to COMENITY; by failing to maintain reasonable procedures with

which to filter and verify disputed information in the Plaintiff's credit files; and by relying upon verification from a source it has reason to know is unreliable.

101.    As a result of this conduct, action and inaction of Experian, Plaintiff suffered damages by loss of credit; loss of the ability to purchase and benefit from credit; specifically being denied for a loan, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

102.    Experian's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

103.    Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n, 1681o, or both.

WHEREFORE, Plaintiff demands judgment be entered in his favor and against Experian for the following:

    a)  Actual damages in an amount to be proved at trial;

    b)  Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

    c)  Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

    d)  Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

    e)  Such other and further relief as this Court deems just and proper.

## COUNT VI AS TO TRANSUNION'S VIOLATION OF 15 U.S.C. §1681e(b)

104.    Plaintiff realleges and incorporate paragraphs 1 through 3, 10 through 12, and 17 through 44 above as if fully set out herein.

105.     Transunion violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

106.     As a result of this conduct, action and inaction of Transunion, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from a credit, specifically being denied for a loan, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

107.     Transunion's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. 1681o.

108.     Plaintiff is entitled to recover costs and attorney's fees from Transunion in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, §1681o, or both.

WHEREFORE, Plaintiff demands judgment be entered in his favor and against Transunion for the following:

a) Actual damages in an amount to be proved at trial;

b) Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

c) Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

d) Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

e) Such other and further relief as this Court deems just and proper.

<u>**COUNT VII AS TO TRANSUNION'S VIOLATION OF 15 U.S.C. §1681i**</u>

109.      Plaintiff realleges and incorporate paragraphs 1 through 3, 10 through 12, and 17 through 44 above as if fully set out herein.

110.      Transunion violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Comenity; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files; and by relying upon verification from a source it has reason to know is unreliable.

111.      As a result of this conduct, action and inaction of Transunion, Plaintiff suffered damages by loss of credit; loss of the ability to purchase and benefit from credit; specifically being denied for a loan, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

112.      Transunion's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

113.      Plaintiff is entitled to recover costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n, 1681o, or both.

WHEREFORE, Plaintiff demands judgment be entered in his favor and against Transunion for the following:

      a)  Actual damages in an amount to be proved at trial;

      b)  Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

c)   Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

d)   Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

e)   Such other and further relief as this Court deems just and proper.

**COUNT VI AS TO COMENITY'S VIOLATION OF 15 U.S.C. §1681s-2(b)**

114.   Plaintiff realleges and incorporate paragraphs 1 through 3, 13 through 15, and 17 through 44 above as if fully set out herein.

115.   Comenity violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to verify the Comenity representation within Plaintiff's credit files with Equifax, Experian, and Transunion without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the Comenity representation; by failing to review all relevant information regarding same; by failing to accurately respond to Equifax, Experian, and Transunion; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Comenity representations to the consumer reporting agencies.

116.   As a result of this conduct, action and inaction of COMENITY, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit, specifically having to extend a lease on an unwanted vehicle and being unable to obtain a new lease for a new vehicle, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

117.   COMENITY's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. 1681o.

118.    Plaintiffs are entitled to recover costs and attorney's fees from COMENITY in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff demands judgment be entered in his favor and against COMENITY for the following:

      a)  Actual damages in an amount to be proved at trial;

      b)  Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

      c)  Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

      d)  Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

      e)  Such other and further relief as this Court deems just and proper.

## COUNT VIII AS TO COMENITY'S VIOLATION OF FLA. STAT. §559.72(9)

119.    Plaintiff realleges and incorporate paragraphs 1 through 3, 13, 14, and 17 through 39 above as if fully set out herein.

120.    Defendant attempted to collect a debt that it knew was not legitimate in violation of Fla. Stat. §559.72(9).

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

      a.  Damages;

      b.  Attorney's fees, litigation expenses and costs of suit; and

      c.  Such other or further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiffs demands trial by jury.


Debt Shield Law
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Tel:    844-279-1112
service@debtshieldlaw.com
joel@debtshieldlaw.com

Lauren N. Turner, Esq.
PO Box 292621
Davie, FL 33329-2621
(561) 294-3045
Lauren@LTurnerLaw.com


  /s/ Joel D. Lucoff
Joel D. Lucoff
Fla. Bar No. 192163

  /s/ Lauren N. Turner
Lauren N. Turner, Esq.
FL Bar No. 0121707